UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM B. FOGLE | : | 1:15-CV-01608 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| CUMBERLAND COUNTY PRISON | : | |
| and DEPUTY WARDEN-SECURITY | : | |
| ILGENFRITZ, | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I.  Introduction.**

The plaintiff, William B. Fogle, a prisoner proceeding *pro* se, filed a complaint and an application to proceed *in forma pauperis*.   By an Order dated September 16, 2015, Fogle's application for leave to proceed *in forma pauperis* was granted and the complaint was screened.   Although the complaint fails to state a claim upon which relief may be granted, Fogle was given leave to file an amended complaint.   But he has not filed an amended complaint, and so it is recommended that the complaint be dismissed and the case file closed.

## II.   Factual Background and Procedural History.

The complaint names as defendants the Cumberland County Prison and Deputy Warden Ilgenfritz.   Fogle alleges that, on June 7, 2015, his disciplinary segregation time expired, but he was not allowed to move back to general population.   Instead, he was kept on "23 and 1,"[1] and a sergeant told him that Deputy Warden Ilgenfritz placed him on administrative segregation and he was to stay housed in segregation.   According to Fogle, on June 26, 2015, at the request of Inmate Mike Kman, Ilgenfritz and a sergeant created a janitor job and gave it to Fogle, which allowed him to come off of "23 and 1" while still being housed on administrative segregation.   Fogle also alleges that during this time, Ilgenfritz allowed Inmate Mike Kman to wear recording equipment.

Fogle further alleges that in mid July 2015, the prison called him for a visit with his public defender, but when Fogle arrived for the visit he discovered that his visitor was not his public defender.   Rather, he met with a man who said that he was Fogle's new court-appointed lawyer.   According to Fogle, as the man stood to shake his hand, he noticed wires coming out of his pants, and when Fogle asked

---

[1] Fogle does not explain what he means by "23 and 1," but the court assumes that Fogle's reference to "23 and 1" means that he was kept in his cell for 23 hours a day and allowed out of his cell for only one hour a day.

what the wires were for, the man did not respond.   Fogle alleges that he then pulled the wires and revealed a microphone.   The man allegedly then said he was a detective and asked Fogle to sit down.   Fogle refused and walked out, at which point the man yelled "I got what I need."   According to Fogle, he returned to his block and was told to pack because he was moving.

Fogle alleges that he filed a grievance against Deputy Warden Ilgenfritz for allowing his civil rights to be violated by allowing the detective to pose as a lawyer and giving Fogle and the detective an attorney visiting room to use.   Ilgenfritz responded that Fogle was not injured by the event and so his grievance was not justified.

Fogle does not state what relief he is seeking.   He does state in the "Relief" section of his complaint that he wants to make a case for the torment he went through while on "23 and 1" for no real reason other than to allow another inmate to work with law enforcement to build a case against him.   He also claims that the Cumberland County Prison and Ilgenfritz violated his rights by allowing the detective to pose as an attorney and to take recording equipment into an attorney visiting room.   For the reasons discussed below, the complaint fails to state a claim upon which relief may be granted.

3

## III.  Discussion.

### A. Screening of *In Forma Pauperis* Complaints—Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by prisoners given leave to proceed *in forma pauperis* in cases that seek redress against government officials.   Specifically, the court must review the complaint in accordance with 28 U.S.C. § 1915A, which provides, in pertinent part:

> **(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> > **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > **(2)** seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."   This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

4

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).   The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).   "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).   A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906

(3d Cir. 1997).   Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.   In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and '"however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).   Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704

6

F.3d 239, 245 (3d Cir. 2013).   Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. The Complaint Fails to State a Claim Upon Which Relief May Be Granted Against the Cumberland County Prison.

Fogle brings his claims under 42 U.S.C. § 1983.   "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).   Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*   To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

The Cumberland County Prison cannot be a defendant in this action.   "Courts have repeatedly recognized that a prison or correctional facility is not a person for purposes of civil rights liability." *Pigford v. Cumberland Cnty. Prison*, No. 3:11-CV-598, 2011 WL 1375267, at *3 (M.D. Pa. Apr. 12, 2011) (citing cases and holding that "the Cumberland County Prison is clearly not a person and therefore not subject to civil rights liability").   Thus, the Cumberland County Prison is not properly named as a defendant in this civil-rights action.

### C.   The Complaint Fails to State a Claim Upon Which Relief May Be Granted Against Defendant Ilgenfritz.

It appears that the complaint asserts a due process claim against defendant Ilgenfritz for placing and keeping Fogle in administrative segregation.   The complaint fails, however, to state a due process claim upon which relief may be granted because Fogle has not alleged facts from which it can reasonably be inferred that he had a liberty interest protected under the Due Process Clause.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."   A due process claim requires a two-part analysis.   First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or

8

property found in the Due Process Clause. *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir. 2000).   Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when the state can create liberty interests protected by the Due Process Clause, held that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483-84.   In *Sandin,* the inmate was sentenced to thirty days of disciplinary confinement in the Special Holding Unit.   As a result of the prisoner's disciplinary segregation he "had to spend his entire time alone in his cell (with the exception of 50 minutes each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains)." *Id.* at 494 (Breyer, J. dissenting).   The Court concluded that the inmate's thirty days in the Special Holding Unit, considered within the context of prison confinement, did not impose the type of atypical and significant deprivation of liberty in which the state could be seen to have created a liberty

interest. *Id.* at 486.   The Court noted that disciplinary confinement at the prison in question, with only insignificant exceptions, mirrored conditions imposed on inmates in administrative and protective custody; that based on a comparison of inmates inside of and outside of disciplinary segregation, placement in segregation for thirty days did not work a major disruption in the inmate's environment; that disciplinary action did not inevitably affect the duration of the inmate's sentence; and that the "regime to which [the inmate] was subjected was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 486–87.

"After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005) (quoting *Sandin,* 515 U.S. at 484).   In deciding whether a protected liberty interest exists under *Sandin,* we consider the duration of the confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003).   Whether a protected liberty interest exists under *Sandin* requires inquiry

into the specific facts of the case. *Id.* at 533.   But "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pennsylvania Dept. of Corrections,* 642 F.3d 163, 171 (3d Cir. 2011).

Fogle has not alleged facts from which it can reasonably be inferred that he was subjected to atypical and significant hardships in relation to the ordinary incidents of prison life such that he had a liberty interest protected by the Due Process Clause.   It is not clear exactly how long Fogle was kept on administrative segregation, but he alleges that he was only kept in "23 and 1" for approximately 20 days (from June 7, 2015 to June 26, 2015).   And even assuming that he is still in administrative custody, he has only been so for less than five months (from June 7, 2015 to date).   Although an unduly lengthy period in administrative confinement may amount to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, Fogle has not alleged such an unduly lengthy confinement. *Compare Shoats,* 213 F.3d at 144 (holding that "eight years in administrative custody, with no prospect of immediate release in the near future, is "atypical" in relation to the ordinary incidents of prison life, and that Shoats' eight-year confinement subjects him to conditions that differ significantly from

11

"routine" prison conditions in Pennsylvania state institutions"), *with Griffin v.*

*Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997)(holding that a Pennsylvania prisoner's

confinement in administrative custody for 15 months did not implicate a liberty

interest).   Moreover, Fogle has not alleged that he was denied basic necessities or

otherwise subjected to atypical and significant hardships in relation to the ordinary

incidents of prison life while in administrative custody.   Thus, Fogle has not alleged

facts from which it can reasonably be inferred that he had a liberty interest protected

by the Due Process Clause.   Accordingly, the complaint fails to state a due process

claim upon which relief may be granted based on Fogle's confinement in

administrative segregation.

The amended complaint also fails to state any other claims against defendant

Ilgenfritz upon which relief may be granted.   While Fogle seeks to hold Ilgenfritz

liable for allowing another inmate to wear recording equipment and for allowing a

detective to pose as an attorney and wear recording equipment, he has not alleged

facts from which it can reasonably be inferred that Ilgenfritz was personally

involved in those alleged events.

Liability in a § 1983 action is personal in nature, and to be liable, a defendant

must have been personally involved in the wrongful conduct.   In other words,

defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).   And so respondeat superior cannot form the basis of liability. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005).   "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).   Thus, to establish a § 1983 claim, a plaintiff must show that a defendant participated in a violation of the plaintiff's rights, directed others to violate those rights, or otherwise had knowledge of and acquiesced in violations committed by subordinates. *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190–91 (3d Cir. 1995).

The allegations in the complaint fail to lead to a reasonable inference that Ilgenfritz was personally involved in the other inmate wearing recording equipment or in the detective posing as an attorney.   In that regard, although Fogle concludes that Ilgenfritz allowed such to happen, he does not alleged facts from which it can reasonably be inferred that Ilgenfritz participated in such or had knowledge of and acquiesced in any activity of either the other inmate or the detective.

Further, the fact that Ilgenfritz denied Fogle's grievance after the events at issue had already transpired fails to show personal involvement on Ilgenfritz's part

13

in the underlying actions.   In some circumstances a grievance may be sufficient to

put a prison official on notice of alleged continuing abuse by other prison staff and

therefore may show actual knowledge of an alleged constitutional violation and

acquiescence in the events forming the basis of a prisoner's claims. *See Atkinson v.*

*Taylor,* 316 F.3d 257, 270-271 (3d Cir. 2003)(refusing to hold as a matter of law that

correspondence or conversations with prison officials do not constitute sufficient

evidence of actual knowledge and acquiescence); *Diaz v. Palakovich,* 448

Fed.Appx. 211, 215 (3d Cir. 2011)(holding that summary judgment for the

defendants was improper where the defendants had knowledge through the

grievance process of an alleged ongoing practice of improper handling of the

plaintiff's mail and the defendants failed to take corrective action).   But a grievance

about events that happened in the past and are not ongoing is not sufficient to raise

an inference that the officials or administrators who answered that grievance were

involved in the alleged underlying unconstitutional conduct. *See Brooks v. Beard*,

167 F. App'x 923, 925 (3d Cir. 2006) ("Although the complaint alleges that

Appellees responded inappropriately to Brooks's later-filed grievances about his

medical treatment, these allegations do not establish Appellees' involvement in the

treatment itself.").   Here, although Fogle alleges that he filed a grievance after the

events at issue had transpired and Ilgenfritz responded to the grievance, such does
not show that Ilgenfritz was personally involved in the underlying events.   Because
the complaint fails to allege personal involvement on the part of defendant Ilgenfritz
in the events at issue, the complaint fails to state a claim upon which relief may be
granted against him.

Moreover, in addition to failing to allege how Ilgenfritz was involved in the
events, Fogle fails to allege how the events at issue violated his constitutional rights.
For example, he does not allege that either the other inmate or the detective
deliberately elicited an incriminating statement from him about a crime for which
his Sixth Amendment right to counsel had attached. *See Massiah v. United States*,
377 U.S. 201, 206 (1964)(holding that the Sixth Amendment right to counsel was
violated when a government informant, in the absence of the defendant's counsel,
deliberately elicited information from the defendant who had been formally
charged); *United States v. Hammer*, No. 4:96-CR-0239, 2014 WL 2465276, at *13
(M.D. Pa. May 29, 2014) ("In order for a *Massiah* violation to exist, however, three
factors must be present: (1) the right to counsel must have attached; (2) the
informant must have been acting as a government agent; and (3) the informant must
have deliberately elicited the information in question."). In sum, Fogle has failed to

15

allege facts from which it can reasonably be inferred that his constitutional rights were violated.

### D. Fogle Failed To File an Amended Complaint.

Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provision of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).   In light of the liberal-amendment requirement, Fogle was granted leave to file, on or before October 14, 2015, an amended complaint, but he failed to do so.

### IV. Recommendation.

Based on the foregoing, it is recommended that the complaint be dismissed and the case file closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.   Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which

16

objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2nd day of November, 2015.




*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge